CASE 96.—ACTION BY MRS. MILLIE M'HARGUE AGAINST JARVIS L. JACKSON AND OTHERS TO RECOVER THE PRICE OF CONSTRUCTING A SIDEWALK.— January 9. 1908.

## Jackson, &c. v. McHargue, &c.

Appeal from Laurel Circuit Court.

From the judgment plaintiff appeals.—Reversed.

1.  Dedication—Acquiescence in Public Use.—Where the owner of a strip of land contracted for the laying of a sidewalk over the same, under a city ordinance requiring the laying of a sidewalk, it amounted to a dedication of the strip.
2.  Municipal Corporation—Streets—Assessments.—Where for over 20 years that portion of a road within the limits of a city had been maintained as a street, and, though it had originally been a county road, the county made no claim to it or attempted to exercise any dominion over it, the part within the city was a city highway, for improvements of which the city might levy special assessments.
3.  Same—Enforcement of Assessments—Action on Warrant.— In an action under Ky. St. 1903 section 3706, on a warrant issued to the contractor for a street improvement, the procedure being in rem, it was error to award a personal judgment against the property owner.

HENRY C. HAZELWOOD for appellants.

E. H. JOHNSON for appellees.

OPINION OF THE COURT BY JUDGE BARKER—Reversing.

London, the county seat of Laurel county, is a city of the sixth class. Jarvis L. Jackson and Mayme F. Jackson (the latter being an infant) are the owners of a lot of land in London fronting on Main street. In this property the mother of the infants, Maggie E. Dyche, owns a dower interest, and her second husband, A. R. Dyche, is the guardian of his step-daughter. The board of trustees of the town of London duly and legally passed an ordinance for the improvement of Main street by making a flagstone sidewalk five feet in width in front of the property owned by the appellants. This ordinance is numbered 104. Afterwards, ordinance No. 104 was amended by ordinance No. 112; the amendment being to strike out the words "not exceeding a square." With this exception ordinance No. 112 is in all respects the same as ordinance No. 104. By the terms of the ordinance it is provided:

"That if the owners of said property in said square and along said street, fronting and abutting on Main street as aforesaid, shall fail for thirty days after the passage and publication of this ordinance to enter upon the construction of said walk in good faith, it shall be the duty of the street supervisor to advertise by notice printed in a newspaper published in said town, that on a day to be named in said notice, at least ten days from the publication of said notice and up to one o'clock p. m. on the day named, sealed bids will be received by the street supervisor for the construction of the aforesaid sidewalk according to plans above set forth."

After the passage of this ordinance, the appellants, through A. R. Dyche, contracted with J. N. Russell

to do the work in front of their property for the price of seventy-five cents per lineal foot; and in pursuance to this contract, Russell proceeded with the work, placing a lot of stone upon the ground, and receiving an advance of thirty-three dollars from Dyche. Subsequently, Dyche became offended because the grade established by the city engineer was not satisfactory to him, and in some way not clearly explained in the record, Russell abandoned the contract, hauled off his rock, and paid back to Dyche the money advanced by the latter. And this was all that Dyche ever did toward making the sidewalk. After the expiration of the thirty days the city authorities advertised the work to be let to the lowest and best bidder; whereupon J. N. Russell made a bid for the contract at the price of one dollar per lineal foot; and this being the lowest and best bid, was accepted, and a contract made with Russell by the city authorities. Russell proceeded with the work under the new contract, and completed the sidewalk, which was received and accepted by the board of trustees, and thereupon a warrant was issued to the contractor for the sum of six hundred and fifty-nine dollars, it having been ascertained that the appellants owned six hundred and fifty-nine feet fronting on the improvement. This warrant the contractor, Russell, sold to Mrs. Millie McHargue, who instituted this action against the appellants to recover of them the contract price due for the construction of the sidewalk. The petition states in detail all of the necessary steps taken in the matter leading up to the liability of the defendants, and without reciting these with particularity, we deem it sufficient to say that it states a good cause of action for a recovery upon the apportionment warrant. The answer of the defendants

presented several defenses: They denied that the sidewalk was completed in accordance with the contract and the ordinance, or that they owned six hundred and fifty-nine feet, or more than six hundred and twenty-seven feet fronting on the improvement; also that J. N. Russell sold or transferred his right, title to or interest in the apportionment warrant to Mrs. Millie McHargue. They then pleaded affirmatively that Main street was not a part of the highway belonging to the city of London, but that it was a part of the old wilderness road belonging to the county, and that the city had no right to improve it as a highway. They also pleaded the fact that they, as owners, had entered into a contract with J. N. Russell to make the sidewalk, and that they had not been given a reasonable time in which to complete the work, and that the city was without right or power to advertise for bidders after they, as owners, had undertaken to improve the property themselves; that under their contract with J. N. Russell he had obligated himself to construct the sidewalk in accordance with the terms of the ordinance at the price of seventy-five cents per lineal foot; and they alleged that the subsequent attempt to amend ordinance No. 104 by ordinance No. 112, the advertising for bids on the work, and the letting of the same to J. N. Russell at one dollar per lineal foot, was a corrupt scheme enacted for the purpose of defrauding them. They further alleged that Lee B. McHargue was a member of the board of trustees of the city of London, which enacted the ordinance under which the work was done; that he was really the contractor, and Russell was merely his instrument and agent for the purpose of performing a contract which he, as trustee of the city, could not legally perform, and that

the sale of the apportionment warrant to Mrs. Millie McHargue was a part and parcel of the fraudulent scheme of her husband, Lee B. McHargue, in securing the benefits of a contract which he, as a trustee of the city, could not himself complete. The defendants also set up the facts herein recited as to the attempt on their part to construct the sidewalk at the price of seventy-five cents per lineal foot, and the fact that the city had wrongfully let the work under the amended ordinance at one dollar per lineal foot to J. N. Russell; and this they pleaded as a counterclaim against the city, praying that, if the court should reach the conclusion that they were bound under the apportionment warrant to the assignee of the contractor for one dollar per lineal foot, they should be awarded a judgment on their counterclaim against the city for the twenty-five cents per lineal foot which they would be forced to pay by reason of the wrongful acts of the city authorities.

After the issues were completed by appropriate pleading, and the evidence taken, the case was submitted to the chancellor for final adjudication. The chancellor found, as a matter of fact, that the appellants owned only six hundred and forty-six feet of ground fronting on the improvement, and awarded Mrs. Millie McHargue, the assignee of the contractor, a personal judgment against them for six hundred and forty-six dollars, with interest at the rate of six per cent. per annum from the 12th day of March, 1904, until paid; and to secure the payment of this, it was held that the assignee had a lien on the property of the defendants fronting on the improvement, which was enforced in the judgment; he also held that the work was not constructed in accordance with the contract and ordinance, and was really worth only

seventy-five cents per lineal foot, and he, therefore, awarded the defendants a judgment over on their counterclaim against the city of London for the twenty-five cents per lineal foot in excess of the real value of the contract work which they were required to pay by the negligence of the city in failing to supervise the work properly. This counterclaim amounted to one-hundred and sixty-one dollars and fifty cents. From this judgment the original defendants are here on appeal.

We think the contention of the defendants, that Main street, being a part of the old wilderness road, belongs to the county, and that the city could not legally order its improvement, is not maintainable under the evidence. So much of the road or street as is involved in this litigation has been within the city limits since 1884, during all of which time the city authorities have considered it a public street of the city, and maintained it as such. The county makes no claim to the road; nor has it, within the time mentioned, so far as this record shows, exercised, or attempted to exercise, any act of dominion over it, and we are of the opinion that so much of the road as lies within the corporate limits of the town constitutes a part of its highways over which it may exercise the dominion authorized by its charter. Moreover, it may be said that the sidewalk involved here is the third one that has been laid on this particular strip of ground since 1884.

The defense that the ordinance and contract were void because Lee B. McHargue, one of the trustees of the town, was the real beneficiary under them, is not sustained by the facts. The chancellor found that the evidence did not support this charge, and in his conclusion we concur. The evidence of the defend-

ants on this point, at best, serves only to create a suspicion, but would not authorize the court to reach the conclusion that the trustee had been as false to his duty as is charged in the petition.

The claim of the defendants, that the sidewalk, as laid, overlaps a part of their private property, does not seem to be supported by the facts. The evidence shows, as said before, that the sidewalk in question is the third laid on the same strip of ground, and one of the defenses of the appellants is that they had contracted with J. N. Russell, under ordinance No. 104, to make the pavement which they now claim overlaps their land. This, of itself, would constitute a dedication of a small strip of ground belonging to the appellants, which it is now claimed was wrongfully taken.

There is no doubt that the defendants proceeded in good faith, under ordinance No. 104, to do the work themselves as authorized by its terms; and there is evidence to support the conclusion of the chancellor, that the further prosecution of the work under this contract was abandoned by the defendants, and the contract between them and Russell rescinded. If they had constructed the pavement themselves under the contract between them and Russell, the work would have cost them seventy-five cents per lineal foot; and this, of course, under their contract, they would have had to pay. Now, assuming that they are right in the position that the chancellor erred in reaching the conclusion that they had abandoned their contract with Russell, still the judgment, in its practical outcome (so far as the amount is concerned) gives them precisely what they contend for on this branch of their defense. It is true, the contractor is given a judgment for one dollar per lineal foot;

but, at the same time, the defendants are given a
judgment over against the city for the excess of
twenty-five cents per lineal foot. So that, upon the
whole judgment, the defendants will have paid only
seventy-five cents per lineal foot. This is what they
pleaded they had a right to do under their contract
with Russell, and, therefore, they are not injured be-
cause the chancellor gave them twenty-five cents per
lineal foot in a way different from what they desired
it. It might have been difficult to sustain the chan-
cellor in his conclusion that after the acceptance of
the work by the city authorities, he had the right, as
against the city, to abate the contract price from one
dollar per lineal foot to seventy-five cents per lineal
foot, and give judgment over against the city for the
excess (Eversole v. Walsh, 25 Ky. Law Rep., 784;
Mudge, et al. v. Walker, et al., 28 Ky. Law Rep.,
996); but of this the municipality is not complaining,
and, therefore, as we have said before, the defend-
ants will have paid upon the whole judgment only
seventy-five cents per lineal foot, and this they con-
tracted to do.

We are of opinion that ordinance No. 112 was
merely amendatory of ordinance No. 104, and that
the work involved in this litigation was done under
the original ordinance. The amendment made by
No. 112 was, so far as this case is concerned, imma-
terial, and it may for all practical purposes be con-
sidered as void without any change being made in
the rights of the parties under ordinance No. 104.

But the court erred in awarding a personal judg-
ment against the defendants. This procedure is
under section 3706, Ky. Statutes, and being strictly
in rem, it was error to award a personal judgment
against the defendants for the improvement of the

highway in question. Meyer v. City of Covington, 103 Ky., 546; Woodward v. Collett, 20 Ky. Law Rep., 1066.

For this reason alone, the judgment is reversed, with directions to the trial court to set aside so much of the judgment as awards a personal judgment against the appellants.